MANUEL PARRONDO DIEZ, Plaintiff and Appellee, *v.* L. RODRÍGUEZ & Co., Defendant and Appellant.

No. 8969. Argued November 9, 1944.—Decided January 17, 1945.

R. *Cuevas Zequeira* for appellant.   H. *Ramos Mimoso* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

On August 14, 1942, the appellee filed a complaint in the Municipal Court of San Juan pursuant to the procedure established by Act No. 10 of 1917 (vol. II, p. 216), as amended. He alleged that the defendant was the successor and continuer of the work of the firms L. Rodríguez & Co., *S. en C.*, and L. Rodríguez & Co., and like its predecessors, it is engaged in this city in the making and sale of men's clothing; that from 1927 to March 15, 1941, the complainant worked for said firms as workman or employee in charge of different duties in and out of the establishment, at a weekly salary of $12.00; that according to the verbal contract of work the complainant was bound to work eight hours daily, but that in spite of that agreement, during his employment with the defendant and its predecessors he had worked on working days from 7:30 a.m. to 12. m. and from 1:00 p.m. to 8:00 p.m.; on Sundays from 8:00 a.m. to 12 m.; that when inventory was made, that is, during fifteen days of every year, he worked three extra hours, from 8:30 p.m. to 11:30 p.m.; that from November 5, 1935, on which date Act No. 49 of 1935, became effective, until March 14, 1941, when the

complainant ceased in his employment, he had worked on regular days, in addition to the eight hours daily agreed upon, a total of 5,853 extra hours and on Sundays a total of 1,112 extra hours.

In his second and third causes of action the complainant claimed compensation for the extra hours which he had worked between August 3, 1931, and November 4, 1935, and between July 27, 1930, and August 2, 1931, respectively. The complainant prayed for judgment in the amount of $2,442.48 and for compensation in a sum not to exceed $50, to be fixed by the court, together with costs, expenses, and attorney's fees.

The defendant admitted that the complainant had worked for it and for its predecessors, from 1927 until March 14, 1941, at a weekly salary of $12, and alleged that complainant's schedule of work had always been from 8:00 a.m. to 12 m., and from 1:30 p.m. to 5:30 p.m. The defendant denied that the complainant had worked extra hours for a period of fifteen days every year, and alleged; on the contrary, that although it was true that the complainant had worked a couple of extra hours at nighttime on two or three occasions, the task in question had never extended beyond three days of extra work, for which work the complainant had received the compensation demanded by him. It further denied that the complainant had extra hours accumulated, and as new matter of defense it alleged:

(*a*) Lack of jurisdiction in the municipal court;

(*b*) Insufficiency of the complaint;

(*c*) That complainant's claim corresponding to the period prior to August 15, 1939, had prescribed, Civil Code. § 1867, subdivision 3; and

(*d*) That the complainant was estopped from bringing any action on the facts alleged in the complaint because he had been paid, through the Department of Labor, the amount which according to that Department the defendant was bound to pay.

In the appeal taken by the defendant from the judgment of the municipal court, the district court dismissed the defenses "A", "B", and "C", relying for its decision on the cases of *J. L. Wiewall & Co.* v. *District Court*, 61 P.R.R. 443, *Cardona* v. *District Court*, 62 P.R.R. 59, *Muñoz* v. *District Court*, 63 P.R.R. 226, respectively. Entering into the merits of the case the court found that from November 5, 1935,[1] until March 15, 1941, the complainant had worked during week days 11½ hours and during that same time 1,580 ninth hours. The court stated that since the complainant had not proved his allegation to the effect that his contract was to work eight hours daily[2] it should be understood that his contract included 11½ hours daily; that by dividing the salary of $12 by the seven days of the week,[3] it appeared that the complainant was earning $1.71 per day, and by dividing this last amount by 11½, which was the number of hours which according to the court he was bound to work daily, it was concluded that he was earning 15 cents per hour; and inasmuch as the complainant had received single compensation for the ninth hour when he had been paid the $12 weekly, the only compensation due him was the additional pay for 1,580 ninth hours, that is, $237.00.

The court further found that from the beginning of 1927 until May 13, 1937, during 537 Sundays, the complainant had worked four hours every Sunday, that is an average of 2,148 hours and by computing them at the rate of 15 cents per hour it granted him the amount of $322.20.

---

[1] Act No. 49 of 1935 which fixed the working day of eight hours daily and granted to the workman double compensation for the ninth hour worked became effective on November 5, 1935.

[2] This finding of the court is erroneous, since in the complaint it is alleged that the contract was for eight hours of work, and that allegation was expressly admitted in the answer. But since the complainant did not appeal from that judgment, we cannot disturb that finding consented by him.

[3] In its opinion the court stated that in view of the evidence introduced by the parties, and which it believed, it reached the conclusion that the salary which the complainant received under the contract was $12 weekly for seven days of work.

Upon deciding the fourth defense alleged by the defendant the court dismissed the same on the ground that when the complainant ceased in his employment the amount which he received from the defendant through the Department of Labor was a bonus for the work rendered by him during 14 consecutive years to the defendant and its predecessors.

Lastly, the court did not grant compensation to the complainant for the extra hours which he worked during 15 days every year from November 5, 1935, until he ceased in his employment; it dismissed the second and third causes of action and rendered judgment ordering the defendant to pay him the amount of $559.20 and legal interest on said sum from the date of the filing the complaint and costs.

In this appeal defendant alleged that the lower court erred:

1. In dismissing the plea of prescription;

2. In dismissing the defense that the complainant was barred to claim salary for extra hours after he had settled his claim through the Department of Labor;

3. In believing the testimony of the complainant, and

4. In adjudging the defendant to pay to the plaintiff the amount of $559.20.

The trial court acted correctly in relying on *Muñoz* v. *Court, supra,* for the dismissal of the defense of prescription. Neither did it err in dismissing the defense referred to in the second assignment of error because the evidence shows that the amount paid to the defendant through the Department of Labor was a bonus in consideration of the services rendered by the complainant to the defendant and its predecessors for fourteen consecutive years. Therefore, the complainant is not estopped to claim compensation for the extra hours which he alleges to have worked and to which under the law and the above cited cases he was entitled. Nor did the court err in believing the testimony of the complain-

ant. His testimony was not contradicted and besides, it is supported by the other witnesses including some of the defendant's.

■■ Let us now pass upon whether the court erred in adjudging the defendant to pay to the complainant the amount of $559.20. As we have already seen, this amount is composed of two items: One of $239 for the ninth hour and the other of $322.20 for the four hours worked on Sundays.

As to the first item, the decision of the lower court is supported by Act No. 49 of 1935, as repeatedly construed by this court.

As to the second, the lower court grounded its decision on § 553 of the Penal Code, as amended by Act No. 18 of May 20, 1925 (Laws of 1925, p. 136), and on § 2 of said Act, to wit:

"Section 553.—That all day Sundays, except when the 24th of December and the 1st and 5th of January fall on Sunday; on the first Monday in September (Labor Day) and the 4th of July; on all legal holidays from 12 A.M.;* on all working days from 6 P.M., and on the 24th and 31st days of December, and the 5th day of January of each year, from 10 P.M., commercial and industrial establishments shall remain closed to the public; and one hour after closing, no work of any kind shall be permitted the employees of said establishments, except those stated below:

"*          *          *          *          *          *          *

"Section 2.—That employees and clerks of enterprises and establishments *not exempted by law,* and who render services on the basis of an annual, monthly or weekly, or in any form other than for wages or piece work at a fixed price, shall be entitled to one day of rest for every six days of work at full salary." (Italics ours.)

The establishment of the defendant is not among those exempted by § 553 of the Penal Code, and since § 2 of Act No. 18 of 1925 states that employees and clerks of enterprises and establishments *not exempted* by § 553 who render services on the basis of an annual, monthly or weekly salary,

---

* NOTE. The phrase "on all Saturdays from 9 p. m.;" was inadvertently omitted from the English text of the Section.

shall be entitled to one day of rest at full salary for every six days of work, applying by analogy the doctrine established in *Compañía Popular* v. *District Court*, 63 P.R.R. 116, the lower court granted compensation to the complainant for 2,148 hours worked during Sundays.

From the text of the Act of 1925 and from the vicissitudes of the Section of Act No. 26 of November 23, 1917 (vol. II, p. 272), granting for the first time one day of rest at full salary for every six days of work, there is no doubt that the work "not" appearing in § 2 of the Act of 1925 was erroneously inserted and if not disregarded it would thwart the legislative intent.

An analysis of § 553 of the Penal Code as amended by the Act of 1925, shows that the legislative intent was to prevent employees and clerks of commercial establishments from working over the hours specified in said Section; to relieve them from working on Sundays, on the first Monday in September (Labor Day), and on the 4th of July; and on all holidays from 12 m., and on Saturdays from the time specified in said Section. But realizing that there are certain establishments to which this provision should not be applied, the Legislature exempted them from the provisions of said Act and, consequently, the employees of the establishments so exempted could be compelled to work on Sundays and holidays. Therefore, the employees of establishments not exempted by said Section enjoy the rest provided therein during the days fixed by the Act, while the employees and clerks of the establishments exempted do not enjoy those days of rest. However, the latter employees were the ones who needed the rest. It could not have been the legislative intent to grant one day of rest to employees who by operation of law already had it and yet to leave unprotected the clerks or employees of those establishments or enterprises who had no day of rest during the week.

Let us go over the history of the Act.

Since 1902 the lawmaker began to concern himself in the rest which was due to all employees and clerks of commercial enterprises or establishments. Thus, when enacting the Penal Code by its § 553 [4] said establishments were ordered to remain closed on Sundays from 12 m. Certain establishments were exempted, such as public markets, pharmacies, bakeries, theaters, and other places devoted exclusively to amusements or charitable purposes. However, it did not provide for the rest of the employees of the establishments exempted.

The year 1913 marks an advance toward the right of the employee to have his day of rest, it being provided in Act No. 57 of March 13, 1913 (Laws of 1913, p. 95), that in addition to closing on every Sunday afternoon, the establishments must remain closed on all holidays from 12 m., on every Saturday from 10 p. m., and on all week days from 7 p. m.; and by Act No. 131 of August 9 of the same year (Spec. Sess. Laws, p. 86) it was provided that during all day Sunday, on all legal holidays from 12 m., on Saturdays from 10 p.m., and on all week days from 6 p.m., commercial and industrial establishments not exempted by law should remain closed. Yet, the right of the clerks and employees of establishments and enterprises not exempted by law still remain forgotten.

In 1914, the rights of the employees suffered a reverse when by Act No. 24 of March 28, 1914 (Laws of 1914, p. 170), it was ordered that on week days (except Saturdays which were closed at 10 p. m.) the establishments be closed

─────────

[4] Section 553 of the Penal Code, originally read thus: "That on every Sunday commercial and industrial establishments, excepting public markets, pharmacies, bakeries, hotels, restaurants, cafes, and places where refreshments only are served, excepting also public and quasi-public utilities and works of emergency, necessary to prevent unusual and serious financial loss, shall remain closed and do no business whatever after twelve o'clock noon. This prohibition shall not, however, extend to theaters and other places devoted exclusively to amusements or to charitable places devoted exclusively to amusements or to charitable purposes; at all such places it shall be lawful to work at any hour on Sunday, but only in aid of such charitable purposes or amusements."

at 7 p. m. instead of 6 p. m. as had been provided in 1913, and that on December 24 and January 5 they should be closed at 10 p. m. The status of the employees of the establishments or enterprises exempted by law still remained unchanged.

In 1917, the lawmaker again turned his attention to the rights of the employees, and by Act No. 26 of November 23, 1917 (Spec. Sess. Laws, p. 272), it granted as a day of rest all of Labor Day, and the 4th of July; it ordered the closing of the establishments on Saturdays from 9 p.m. instead of 10 p.m., and on all week days the establishments not exempted by law were again ordered to remain closed after 6 p. m. For the first time in the history of this legislation, the lawmaker revealed his intention of doing justice to the forgotten employees of the enterprises exempted by law, but unfortunately that intention was again thwarted because in granting, under § 3 of said Act No. 26 of 1917, a day of rest at full salary for every six days of work to employees who rendered services on the basis of an annual, monthly, or weekly salary or in any form other than for daily wage or piece-work at a fixed price, it was erroneously provided, as we shall presently see, that that benefit was granted to employees and clerks of establishments *"not exempted* by law." (Italics ours.) That the word "not" preceding the words "exempted by law" was a *lapsus* of the Legislature, is shown by the fact that when it noticed the error it had committed, at the first opportunity, less than three months after the approval of the Act of 1917, it hastened to amend it by Act No. 3 of February 18, 1918 (Laws of 1918, p. 16), for the sole and exclusive purpose of correcting the error, by striking out from the above-copied § 3 the word "not" preceding the words "exempted by law," so that said Section read as follows:

"That employees and clerks of enterprises and establishments exempted by this Act, and who render services on the basis of an annual, monthly or weekly salary, or in any form other than for

wages or piece work at a fixed price, shall be entitled to one day of rest for every six days of work, at full salary.''

But the justice which, although late, was nevertheless done to the employees of the enterprises exempted by law, did not subsist for many years. Act No. 18 of May 20, 1925 (Laws of 1925, p. 136), amended Act No. 26 of 1917 as to other particulars but, since in the title of the amendatory act no mention was made of Act No. 3 of 1918, upon enacting said Act as amended by the Act of 1925, the one of 1918 was overlooked, and § 3 of the Act of 1917, which is equivalent to § 2 of the Act of 1925, was copied therein exactly as it read before the amendment of 1918, thus thwarting once more by accident the legislative intent.[5]

Act No. 54 of April 28, 1930 (Laws of 1930, p. 408), further amended § 553 for the exclusive purpose of including in the first group of exempted enterprises, the factories engaged in packing, canning, and refrigerating fruits and vegetables. The Legislature again overlooked the amendment of 1918, and in the enactment of § 2 the word ''not'' was included.

Finally, Act No. 110 of May 13, 1937 (Laws of 1937, p. 258), corrected the error by striking out for the second time the word ''not,'' so that the employees and clerks of estab-

---

[5] Errors like this are frequently committed in the enactment of our laws, as may be noted in the first paragraph of § 553 of the Penal Code, as amended by Act No. 18 of 1925. Said paragraph in its pertinent part reads thus:

''That all day Sundays, except when the 24th of December and the 1st and 5th of January .... and on the 24th and *31st days of December,* and the 5th day of January of each year, from 10 P. M., commercial and industrial establishments ....'' (Italics ours.)

It may be noted that according to said paragraph, when New Year fell on Sunday, the commercial or industrial establishments or enterprises not exempted by law could remain open all day long without limit of time. However, when New Year fell on a week day, the establishments had to remain closed from 12 m. because it was a legal holiday. It is obvious that the absurdity of permitting the business to open on that day when it fell on Sunday and to order it to remain closed when it fell on a week day could not have been the legislative intent. It will be noted that further on, in the same paragraph, it is specified that the 24th and 31st of December and the 5th of January (the first day of January is omitted), the establishments shall remain closed from 10 p. m. The same error exists in the amendatory acts of 1930 and 1937.

lishments *exempted* by law are the ones entitled to one day of rest, at full salary, for every six days of work.

As we have pointed out, the text of the Act, its spirit, and its legislative history leave no doubt that when the word "not" was included in § 2 of Act No. 1925, it was an error, and that the intention of the Legislature has always been to grant one day of rest at full salary to those employees and clerks of enterprises and establishments *exempted by law* who render services on the basis of an annual, monthly, or weekly salary, or in any form other than wages or piece-work at a fixed price.

Since in our opinion this is the correct construction of the law, the complainant is not entitled to one day of rest at full salary for every six days of work and inasmuch as under his contract he received $12 weekly, including the work done on Sundays, the court erred in granting him extra compensation for the work on Sundays. *Cardona* v. *District Court, supra,* and *Muñoz* v. *District Court, supra.*

The judgment appealed from is accordingly modified by deducting the amount of $322.20 which was granted to the complainant by virtue of the four hours worked on Sundays, thus reducing the judgment to the amount of $237, and as thus modified, the judgment is affirmed.